**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| GARY FORRESTER, | |
| *Plaintiff,* | CIVIL ACTION |
| v. | NO. 20-4319 |
| SOLEBURY TOWNSHIP, et al., | |
| *Defendants.* | |

**PAPPERT, J.**                                    **February 19, 2021**

<u>**MEMORANDUM**</u>

This is a fairly straightforward lawsuit—not that one could tell by the weight of the Amended Complaint.  Gary Forrester was a Solebury Township police officer who injured his ankle on duty in 2017.  He underwent two surgeries and either could not work at all or was limited to light duty from November of 2017 until January of 2019. In February of 2019, Chief of Police Dominick Bellizzie confronted Forrester with information indicating he defrauded Delaware Valley Workers' Compensation Trust, the Township's workers' compensation insurance carrier, by engaging in various physical activities while he was supposedly too injured to work.  Forrester denied the allegations but eventually resigned, signing an Agreement and General Release with Solebury Township, after he was told he could face criminal charges and the loss of his pension if he fought them.

One of the Agreement's provisions was particularly important to Forrester.  It precluded Solebury Township and Chief Bellizzie as well as "others in the [Township] administration" from reporting his alleged conduct to any law enforcement agency for criminal prosecution.  Forrester claims Defendants violated this provision by dropping

1

a dime on him to the Bucks County District Attorney's Office, which subsequently held a hearing to assess his credibility.

Forrester filed an initial Complaint and then an Amended Complaint, which Defendants move to dismiss. After Defendants' Motion was fully briefed, Forrester moved to amend his Complaint a second time, something the Defendants oppose. For the reasons that follow, the Court denies the Motion for Leave to Amend and grants in part and denies in part the Motion to Dismiss.

The Court's partial dismissal of the Amended Complaint is without prejudice. If Forrester files a second amended complaint, he must follow the Court's advice in this Memorandum and accompanying Order and drastically scale his pleading back to allege only those facts necessary to show he has plausible claims to relief. His current pleading is forty-three pages long and contains 357 paragraphs. Judicial economy is but one of many reasons Forrester should heed Polonius's maxim that brevity is the soul of wit.

## I

### A

#### i

Forrester worked as a Solebury Township police officer from April of 2003 until February of 2019. (Am. Compl. ¶ 22, ECF No. 13.) On May 6, 2017, he injured his right ankle on the job. (*Id.* at ¶¶ 26–27.) He ceased full duty because of his injury in November of 2017 and did not return to full duty work until on or around January 14, 2019. (*Id.* at ¶¶ 28, 115.)

Forrester worked light desk duty from November 20, 2017 to February 11, 2018 and, after having ankle surgery on February 12, worked for the Township Administration Office from June 4 to 25 and July 2 to 9, 2018.  His work for the Administration Office "required a great deal of walking" and increased the soreness and swelling in his ankle.  (*Id.* at ¶¶ 32–36, 72.)  After July 9, Forrester's surgeon barred him from non-sedentary light duty, and sometimes from work entirely, for many months.  On July 10, Forrester's surgeon wrote a note stating "[n]o work until further notice."  (*Id.* at ¶¶ 74–77.)  On July 26, Forrester underwent a second ankle surgery and was put in a hard cast until September 6.  (*Id.* at ¶¶ 87, 89.)  In October, November and December of 2018 Forrester's surgeon cleared him to return to sedentary light duty only, but Chief Bellizzie repeatedly told Forrester that when he returned he would have to continue his non-sedentary Administrative Office work.  (*Id.* at ¶¶ 94–95, 97–98, 112–113.)  Because of his surgeon's instructions, Forrester did not return to work until he was cleared for full duty.  (*Id.* at ¶¶ 114–115.)

Forrester's surgeon made clear that "back-to-work restrictions were different from . . . at-home restrictions."  (*Id.* at ¶ 102.)  On July 20, 2018 Forrester received permission from his surgeon to coach his son's baseball team wearing a walking boot.  (*Id.* at ¶¶ 78–79.)  In the fall of 2018, Forrester was permitted to gradually walk more at home, drive short distances and go to the gym.  (*Id.* at ¶¶ 100, 106–108.)

Forrester received workers' compensation while he was out for his injury and had two Independent Medical Examinations for the Delaware Valley Workers' Compensation Trust, Solebury Township's workers' compensation insurance company,

on July 13 and October 10, 2018.  (*Id*. at ¶¶ 80, 104, 281.)  His IME physician confirmed

he should follow his surgeon's advice.  (*Id*. at ¶ 105.)

ii

Following a series of interactions with Solebury Township employees regarding

his receipt of workers' compensation while injured, Forrester resigned approximately

one month after he returned to full duty.  On February 6, 2019 Bellizzie called

Forrester into his office with the police union president and served him Proposed

Disciplinary Charges.  (*Id*. at ¶¶ 139–40.)  Bellizzie read from a memorandum telling

Forrester he defrauded the workers' compensation insurance company by exaggerating

his injuries.  (*Id*. at ¶ 141.)  Specifically, on July 13, 2018 he was observed cooking on a

grill at his home and taking a long walk with his family to a nearby field where he

stood throwing and catching a baseball.  (*Id*. at ¶¶ 141–42.)  Bellizzie also played DVDs

showing Forrester coaching first base at his son's baseball game wearing a walking boot

as well as a man, who Forrester says was his neighbor, walking a German Shepherd.

(*Id*. at ¶¶ 144–150.)  He condemned Forrester for performing these activities and

"appear[ing] . . . to do so with ease and without the assistance of . . .crutches, [a] scooter

or [a] wheelchair" and told Forrester he was "suspended with intent to dismiss." (*Id*. at

¶¶ 141, 149, 153, 155.)

On February 7, Forrester met with Solebury Township Detective Jonathan

Koretzky, who told him that if he proceeded with a *Loudermill* hearing on the proposed

charges, he would be terminated, lose his 2019 holiday pay and risk civil and criminal

charges for insurance fraud as well as the loss of his pension.  (*Id*. at ¶¶ 156–59.)

Forrester verbally agreed to resign during the meeting, but withdrew his resignation

4

within days and proceeded with his *Loudermill* hearing after his surgeon agreed to write a letter explaining his at-home activities were medically permitted. (*Id.* at ¶¶ 160–61, 164–73.)

On February 15, Forrester attended his *Loudermill* hearing and hours later received a termination memorandum from the Solebury Township Manager. (*Id.* at ¶¶ 209–10.) The memorandum stated Chief Bellizzie determined based on all of the evidence that Forrester "conducted [himself] in a manner that violates the rules and regulations of the Solebury Township Police Department Disciplinary Code, the Pennsylvania Police Tenure Act, as well as the Pennsylvania Criminal Code" and recommended his immediate discharge. *See* (Gov't Mot. to Dismiss Ex. A 2, ECF No. 16-2) (emphasis removed). The Township Manager adopted Bellizzie's findings and conclusions as part of his decision to end Forrester's employment. *See* (Gov't Mot. to Dismiss Ex. A 3). The memorandum also instructed Forrester, "[y]ou have a right to appeal and challenge my decision under either the grievance procedure of the Police Collective Bargaining Agreement or the Police Tenure Act, but not both. You should review the CBA and consult with a PBA representative and/or your counsel to determine your rights." (*Id.* at 3) (emphasis removed).

On February 22, Forrester met with Bellizzie and the police union president and Bellizzie insisted it would be better for him to retire. (*Id.* at ¶¶ 211, 213.) Bellizzie told Forrester, "in a threatening and menacing manner," that if he proceeded to fight and did not retire he could be charged with insurance fraud, face criminal liability and lose his pension. *See* (*id.* at ¶¶ 214–17.) He said there was clear evidence of Forrester's guilt because DVWCT took the videos of his off-duty behavior. (*Id.* at ¶ 218.) He told

Forrester if he retired, Solebury Township would not contact the District Attorney's Office about his departure.  (*Id.* at ¶ 221.)  "After these repeated threats, and feeling particularly fearful," Forrester consulted with his wife and decided to retire.  (*Id.* at ¶ 223.)

That same day, Forrester signed an Agreement with Solebury Township memorializing his resignation.  (*Id.* at ¶ 224.)  In relevant part, the Agreement stated:

> 3.  Rather than pursue disciplinary charges, the Parties have engaged in negotiations and reached an Agreement that Forester immediately and voluntarily resign and retire from his position and employment upon the terms and conditions further stated herein.  The Township will accept Forrester's voluntary resignation / retirement and not pursue any disciplinary charges. . . .
>
> 8.  *As a result of this Agreement, neither the Township nor the Chief of Police or others in the administration will bring a criminal action nor report the issues set out in the Proposed Disciplinary Charges, dated February 6, 2019, to the Bucks County District Attorney's Office or any other law enforcement agency for criminal prosecution.*  However, neither the Township nor any of its officials have any control over the Bucks County District Attorney's Office nor any other outside law enforcement agency.  Should those agencies bring a criminal action (not foreseen by the Township at this time) the Township may have to cooperate. . . .
>
> [9]a.  In consideration for the commitments set forth herein . . . Forrester and PBA hereby release and discharge the Township and the Department, which includes its elected, appointed and former officials, . . . from any and all claims, liabilities, demands, remedies . . . and causes of action, possible or potential, known or unknown, fixed or contingent, which Forrester has, may have or claims to have against the Township, arising out of or in any way connected to his employment with the Township or his separation therefrom, and does hereby covenant not to file a grievance, unfair labor practice lawsuit, Police Tenure Act or administrative claim or to otherwise assert, make or bring any claims or actions or to authorize or assist in any third party doing so on his behalf.
>
> [9]b.  By this Release, Forrester and the PBA (as to Forrester's situation and claims only) knowingly and voluntarily waives, as to the Township and the world generally, any and all rights, as well as all remedies, provided by or under any laws, federal, state, or local . . . relating in any way to his employment relationship with the Township and his separation therefrom, including, but not limited to (1) the Civil Rights Act of 1990, 42 U.S.C.  §§ 1981, 1983, 1985 & 1988 . . . and (11) any and all laws, acts, statutes, . . . resolutions, regulations,

ordinances or any recognized cause of action under the laws of the Commonwealth of Pennsylvania . . . and the United States . . . that relate in any way to any claim or possible claim that Forrester has or may have against the Township, including any and all tort, whistleblower, and contractual claims, federal state and local laws, statutes, ordinances or acts that relate to employment discrimination, harassment, retaliation and equal pay.

[9]c.  In addition to the foregoing, Forrester and the PBA waive any and all other claims and/or causes of action they may have against the Township based upon any act or omission which occurred prior to the execution of this Agreement. . . .

[9]d.  The Release provided herein applies to and covers all claims and causes of action related and unrelated to Forrester's employment with the Township (except as excluded herein), which exist as of the date of this Agreement.  This release does not apply to any claims arising from conduct or omissions occurring after the execution of this Agreement. . . .

13.  *Review Period and Consultation with Legal Counsel*.  Forrester hereby acknowledges that he has been given sufficient time to consider this Agreement and Release prior to executing it and that he has had the opportunity to consult with personal counsel and have his counsel review this agreement; he is fully satisfied with his counsel's representation.  Forrester further acknowledges that he has carefully read and fully understands all of the provisions of this Agreement and Release and that he enters into it knowingly and voluntarily. . . .

15.  *Entire Agreement*.  This Agreement constitutes all of the terms, conditions, provisions and rights of the Parties.  No other oral, written or electronic promises or representations exist.

(Mot. to Dismiss Ex. B 4–9, ECF No. 16-3) (emphasis added).

iii

Not long after Forrester resigned, he received a letter from the Bucks County District Attorney telling him the office was considering putting him on a "Brady list" and asking whether he wished to have a due process hearing.  (Am. Compl. ¶¶ 227–30.) The letter explained "the documents that Solebury Township provided this office indicate that you intentionally lied and misled the Township while collecting workers compensation."  (*Id.* at ¶ 231.)  Forrester later learned Detective Koretzky "maliciously informed" the District Attorney's Office that Forrester "had resigned rather than be

terminated for committing insurance fraud." (*Id.* at ¶¶ 233–43, 250, 255–60).  He alleges the District Attorney "considered bringing criminal charges" against him but has "settled . . . on holding a *Brady* hearing" for now. (*Id.* at ¶ 297.)

Forrester attended his *Brady* hearing in October of 2019, and said  he and his wife were "humiliated" by the hearing, "which impugned his integrity, his honesty, and his professionalism as a police officer." (*Id.* at ¶¶ 260, 262.)

### B

#### i

Forrester filed his Complaint on September 2, 2020 and, after the Defendants moved to dismiss it, filed an Amended Complaint on October 26.  *See generally* (Compl., ECF No. 1); (Am. Compl.).  He alleges violations of procedural due process against Solebury Township and Bellizzie, breach of contract and wrongful discharge against Solebury Township and fraud and intentional infliction of emotional distress against Bellizzie.  *See generally* (*id.* at 29–36, 41).[1]  Defendants move to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) arguing Forrester waived all of his claims in the Agreement's release provisions.  *See generally* (Mot. to Dismiss 1, 10–19, ECF No. 16).  They also contend that even if Forrester did not waive his claims, he has failed to state a plausible procedural due process claim. (*Id.* at 20–25.)

#### ii

---

[1]     Forrester also sued DVWCT for intentional interference with his employment contract and fraud, but subsequently dismissed those claims by stipulation.  *See generally* (Am. Compl. at 37–40); (Stipulation, ECF No. 23).

After the Parties fully briefed the Motion to Dismiss, Forrester requested leave to file a second amended complaint adding a claim for fraud in the inducement against Solebury Township.  *See generally* (Mot. for Leave to Amend 4, ECF No. 25.)  He says he learned after filing the Amended Complaint that DVWCT never told Solebury Township or Bellizzie he was committing workers' compensation fraud.  (*Id.* at  3.)  Thus, Solebury Township, through its employees, falsely told him surveillance received from DVWCT showed he committed fraud.  (*Id.* at 3.)  Defendants argue amendment would be futile.  *See generally* (Defs.' Opp., ECF No. 26).

II

A

Federal Rule of Civil Procedure 15(a) provides that "courts may grant subsequent amendments 'when justice so requires.'"  *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 116 (3d Cir. 2003), *as amended* (Jan. 20, 2004) (citing Fed. R. Civ. P. 15(a)).  While Rule 15(a)(2) states "leave to amend should be 'freely given,' a district court has discretion to deny a request to amend if it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." *Id.*; *see also Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).  A court has broader discretion to deny leave to amend where the requesting party has already had an opportunity to amend its complaint.  *See Lake v. Arnold*, 232 F.3d 360, 374 (3d Cir. 2000).

Amendment is futile when "the complaint, as amended, would fail to state a claim upon which relief could be granted."  *In re Merck & Co. Sec., Derivative & ERISA*

9

*Litig.*, 493 F.3d 393, 400 (3d Cir. 2007) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)).  "In determining whether a claim would be futile, the district court applies the same standard of legal sufficiency as applies under [Federal] Rule [of Civil Procedure] 12(b)(6)."  *Travelers Indem. Co. v. Dammann & Co.*, 594 F.3d 238, 243 (3d Cir. 2010) (internal quotations and citation omitted).

B

To survive dismissal under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when the facts pled "allow[] the court to draw the reasonable inference that [a] defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

When a complaint includes well-pleaded factual allegations, a court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679).  However, this "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face."  *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted).  "Conclusory assertions of fact and legal conclusions are not entitled to the same presumption."  *Id.*  This plausibility

10

determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Connelly*, 809 F.3d at 786–87).

While "courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record" in deciding a motion to dismiss, *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993), "an exception to the general rule is that a 'document *integral to or explicitly relied upon* in the complaint' may be considered 'without converting the motion into one for summary judgment.'" *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis in original) (citation omitted). "[W]hat is critical is whether the claims in the complaint are 'based' on an extrinsic document and not merely whether the extrinsic document was explicitly cited." *Id.*

### III

Where amendment is futile, "that alone is sufficient ground to deny leave to amend." *Kanter v. Barella*, 489 F.3d 170, 181 (3d Cir. 2007).  Defendants argue allowing Forrester to amend his Complaint again would be futile because he cannot prove fraud in the inducement as a matter of law for three reasons.  First, he cannot show he returned the consideration provided to him through  the Agreement, which the Third Circuit requires for a fraud in the inducement claim.  *See* (Defs.' Opp. 5–6). Second, the parol evidence rule bars him from introducing evidence outside the fully integrated Agreement.  (*Id.* at 5, 7–8.)  Third, the Agreement's release provision precludes the claim.  (*Id.* at 5, 8–9.)

Forrester responds Defendants' arguments all "fail because the Agreement is invalid because it was initiated through coercion, duress and misrepresentation."  (Pl.'s

Reply 3, ECF No. 27.)  He contends the Court must review his proposed amendment in the context of the other causes of action he brings, which he says includes that he is "arguing that the contract itself is null and void."  (*Id.* at 8.)

A

As an initial matter, Forrester's assertion that the Agreement is "null and void" directly contradicts his Response to Defendant's Motion to Dismiss, which he had filed almost two months before.  There, he told the Court "[t]here is no dispute that the Settlement Agreement constituted a legally enforceable contract."  (Resp. to Mot. to Dismiss 8, ECF No. 19.)  And in his initial Complaint, Amended Complaint and proposed Second Amended Complaint he purports to hold Solebury Township accountable under the Agreement through his breach of contract claims.  *See* (Compl. ¶¶ 247–54); (Am. Compl. ¶¶ 292–99); (Proposed Second Am. Compl. ¶¶ 296–305, ECF No. 25-2).  No iteration of the words "null" or "void" appear in his initial or Amended Complaints.  He says he felt coerced to resign, but never says he was forced to sign the Agreement.

Forrester does allege he felt "significant duress" both when he resigned and when he signed the Agreement, but he does not allege the Agreement is invalid because of any duress.  *See* (Am. Compl. 2, ¶ 285).  And in his Response to Defendants' Motion to Dismiss he cites duress to show he sufficiently pleaded violations of his procedural due process rights in his involuntary retirement, not to show the Agreement is null and void.  *See* (Resp. to Mot. to Dismiss 13–14, ECF No. 19).  In any event, "under Pennsylvania law[,] where the contracting party is free to come and go and to consult with counsel, there can be no duress in the absence of threats of actual bodily harm."

12

*Three Rivers Motors Co. v. Ford Motor Co.*, 522 F.2d 885, 893 (3d Cir. 1975) (citing

*Carrier v. William Penn Broadcasting Co.*, 426 Pa. 427, 233 A.2d 519, 521 (Pa. 1967)).

Forrester does not allege any threats of actual bodily harm, and he explicitly

acknowledged in the Agreement "that he ha[d] been given sufficient time to consider

th[e] Agreement . . . prior to executing it and . . . had the opportunity to consult with

personal counsel and have his counsel review th[e] [A]greement."  (Mot. to Dismiss Ex.

B 7.)  He further acknowledged he was "fully satisfied" with his counsel's

representation, he carefully read and fully understood the Agreement's provisions, and

he entered into the Agreement "knowingly and voluntarily."  (*Id.*)

      Forrester suggests the Restatement (Second) of Contracts (1981) governs his

newfound claim that the Agreement is invalid because he entered it to avoid

Defendants' threat of criminal prosecution and Restatement § 175 says "[i]f a party's

manifestation of assent is induced by an improper threat by the other party that leaves

the victim no reasonable alternative, the contract is voidable by the victim."  *See* (Pl.'s

Reply 5–7); *see also Plechner v. Widener College, Inc.*, 418 F. Supp. 1282, 1294 (E.D. Pa.

1976) (applying Restatement (First) of Contracts § 492, to avoid a contract by duress

claimant must establish: "(1) a wrongful act or threat by the opposite party to the

transaction or by a third party of which the opposite party is aware and takes

advantage, and (2) a state of mind in which the complaining party was overwhelmed by

fear and precluded from using free will or judgment").  Section 176 says "[a] threat is

improper if . . . what is threatened is a criminal prosecution."  *See* Restatement

(Second) of Contracts § 176(1)(b) (1981).

Even under the Restatement, however, Forrester fails to demonstrate the Agreement is voidable.  Forrester understood he had options other than signing the Agreement at least seven days before he executed it because his February 15 termination memorandum told him he had the right to appeal the Township Manager's decision and advised him to consult counsel to determine his rights.  (Mot. to Dismiss Ex. A 3.)  Yet after consulting counsel and his wife, and knowing he had his surgeon's letter of support that his at-home activities were medically permitted as well as the IME physician's agreement with his surgeon's advice, he decided not to pursue his procedural rights and instead signed the Agreement.  He has not shown he was induced to sign it by an improper threat that left him with no reasonable alternative.

B

Under Pennsylvania law, the parole evidence rule bars "consideration of prior representations concerning matters covered in the written contract, even those alleged to have been made fraudulently, unless the representations were fraudulently omitted from the contract."  *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1300 (3d Cir. 1996) (citing *HCB Contractors v. Liberty Place Hotel Assoc.*, 539 Pa. 395, 652 A.2d 1278, 1279 (Pa. 1995)) (emphasis removed).  Thus, a court cannot consider a claim of fraud in the inducement for a contract to which the parole evidence rule applies.  *See Batoff v. Charbonneau*, 130 F. Supp. 3d 957, 970 (E.D. Pa. 2015); *Winters v. Inv. Sav. Plan for Emples. of Knight-Ridder, Inc.*, 174 F. Supp. 2d 259, 263 (E.D. Pa. 2001); *Toy v. Metro. Life Ins. Co.*, 593 Pa. 20, 928 A.2d 186, 205 (Pa. 2007).  The Pennsylvania Supreme Court has explained:

> [F]or the parole evidence rule to apply, there must be a writing that represents the 'entire contract between the parties.' . . . To determine whether or not a

14

writing is the parties' entire contract, the writing must be looked at and 'if it appears to be a contract complete within itself, couched in such terms as import a complete legal obligation without any uncertainty as to the object or extent of the [parties'] engagement, it is conclusively presumed that [the writing represents] the whole engagement of the parties' . . . . An integration clause which states that a writing is meant to represent the parties' entire agreement is also a clear sign that the writing is meant to be just that and thereby expresses all of the parties' negotiations, conversations, and agreements made prior to its execution."

*Yocca v. Pittsburgh Steelers Sports, Inc.*, 578 Pa. 479, 854 A.2d 425, 436 (Pa. 2004).

The Agreement contains an "Entire Agreement" provision stating that it "constitutes all of the terms, conditions, provisions and rights of the Parties" and "[n]o other oral, written or electronic promises or representations exist." (Mot. to Dismiss Ex. B 9.) And Forrester's purported fraudulent inducement claim pertains directly to matters covered in the Agreement, which says Forrester voluntarily resigned after engaging in negotiations with Solebury Township. Based on this integration clause and the contents of the Agreement as a whole, the parole evidence rule applies and Forrester cannot state a fraudulent inducement claim. Forrester himself concedes this point as long as the Agreement is valid. *See* (Pl.'s Reply 8 ("if the contract actually contained an acceptable offer and consideration, Defendants would be correct that fraud in [the] inducement could not be brought by Plaintiff")).

It would be futile for Forrester to amend the Amended Complaint to add this claim, and the Court accordingly denies his Motion for Leave to Amend.

IV

In their Motion to Dismiss, Defendants argue Forrester waived all his claims when he signed the Agreement. (Mot. to Dismiss 10.) They further contend even if Forrester did not waive his procedural due process claim, that claim must be dismissed

on other grounds.  First, Forrester failed to take advantage of the appeal process available to him before deciding to resign.  Second, Forrester cannot prove he was constructively discharged.

A

While the Agreement is valid, Forrester is not at this stage bound by its release provisions.  Specifically, Forrester alleges Solebury Township materially breached the Agreement.  If it has, "the law in Pennsylvania excuses the non-breaching party from performing any remaining duties under a contract." *Frontline Techs. V. CRS, Inc.*, 880 F. Supp. 2d 601, 619 (E.D. Pa. 2012);  *see also Eastern Elec. Corp. v. Shoemaker Constr. Co.*, 657 F. Supp. 2d 545, 557 (E.D. Pa. 2009) ("A party who has materially breached . . . may not object if the other party refuses to perform its obligations under the contract and may not insist upon such performance."); *cf. Weisman v. N.J. Dep't of Human Servs.*, 817 F. Supp. 2d 456, 461 (D.N.J. 2011) ("Because Defendants have materially breached the settlement agreement . . . [Plaintiff] is excused from performance of her obligation under the agreement to release all claims . . . .").

To state a claim for breach of contract, a plaintiff must establish: "(1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract[,] and (3) resultant damages." *See Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003) (internal quotations and citation omitted).  "Whether [a] breach of a contract is material is generally an issue of fact" unless "the materiality question in a given case admits of only one reasonable answer." *Norfolk S. Ry. Co. v. Baseball USA, Inc.*, 512 F.3d 86, 92 (3d Cir. 2008) (internal quotations and citation omitted).  Forrester points out the Agreement includes the Township's promise to neither bring a

16

criminal action nor report the issues enumerated in his Proposed Disciplinary Charges to the Bucks County District Attorney's Office for criminal prosecution.  He claims Solebury Township breached the Agreement when Detective Koretzky, a member of the Township administration, told the Bucks County District Attorney's Office Forrester resigned instead of being fired for insurance fraud, an issue that was raised in his Proposed Disciplinary Charges.  After the Bucks County District Attorney learned why Forrester resigned he considered bringing criminal charges against him but settled, at least at that point, on a *Brady* hearing.

Defendants argue the Agreement precludes them and Township administration members from bringing a criminal action against Forrester or reporting him for criminal prosecution, but does not provide for confidentiality.  (Mot. to Dismiss 19); (Reply 3–4, ECF No. 20.)  Forrester does not allege Defendants or the administration brought a criminal action or reported him for criminal prosecution, or that he has been criminally prosecuted.  (Mot. to Dismiss 20.)  He only says that after Detective Koretzky reported him he was given an opportunity to exonerate himself at a *Brady* hearing, which the Agreement does not prohibit.  (*Id.*); (Reply 5.)

The language of the Agreement is not outcome-based.  *See Murphy v. Metro. Life Ins. Co.*, 152 F. Supp. 2d 755, 759 (E.D. Pa. 2001) ("We must interpret a contract in a common sense fashion.") (citing *New Castle Cty. v. Hartford Accident and Indem. Co.*, 970 F.2d 1267, 1270 (3d Cir. 1992)).  Solebury Township can breach the Agreement even if Forrester is never criminally prosecuted—all it takes is for members of the Township administration to report the reason for his resignation to a law enforcement agency *for* criminal prosecution.  At this stage, the Court has no evidence of the

17

circumstances surrounding Koretzky's report to the District Attorney's Office.  That Forrester has only faced a *Brady* hearing thus far does not show Koretzky did not report him for criminal prosecution.

Forrester has plausibly stated a claim for breach of contract and further factfinding is necessary to determine the circumstances of Koretzky's communications with the District Attorney's Office.  Because Forrester's remaining obligations under the Agreement could be excused if Solebury Township materially breached it, the Court cannot conclude at this stage that the Agreement bars his claims.[2]

B

For a plaintiff "[t]o state a claim under [42 U.S.C.] § 1983 for deprivation of procedural due process rights, [he] must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'"  *Hill v. Borough of Kutztown*, 455 F.3d 225, 233–34 (3d Cir. 2006) (citing *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000).  Additionally, "a resignation will be deemed involuntary (i.e., deemed a constructive discharge) and will thus trigger the protections of the due process clause, and form the basis of a § 1983 due process claim, under only two circumstances: (1) when the employer forces the employee's resignation or retirement by coercion or duress, or (2) when the employer obtains the resignation or retirement by deceiving or misrepresenting a material fact to the employee."  *Id.* at 233 n.10.

---

[2]      The Court does not interpret, as Defendants would have it do, the Amended Complaint to contend that Bellizzie fraudulently induced Forrester to sign the Agreement.  Forrester's fraud allegations against Bellizzie assert Bellizzie induced him to *resign*.  *See* (Am. Compl. ¶¶ 312–318).

i

Forrester has not alleged facts showing he has a property interest in his position with the Solebury Township police. *See Hill v. Borough of Kutztown*, 455 F.3d at 234 ("To have a property interest in a job . . . a person must have more than a unilateral expectation of continued employment; rather, [he] must have a legitimate entitlement to such continued employment.") (quoting *Elmore v. Cleary*, 399 F.3d 279, 282 (3d Cir. 2005)). But even assuming he has a protected property interest, he cannot state a plausible claim for deprivation of his procedural due process rights because he cannot demonstrate the procedures available to him pre-resignation failed to provide him due process of law.

"[A] public employee with a property interest in continued employment must be afforded 'a pretermination opportunity to respond, coupled with post-termination administrative [or judicial] procedures." *Morton v. Beyer*, 822 F.2d 364, 367 (3d Cir. 1987) (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 547–58 (1985)). A pretermination hearing "should be an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Id.* (internal quotations and citations omitted). It "need not be elaborate" nor "definitively resolve the propriety of the discharge," but to ensure it is meaningful "the employee is entitled to oral or written notice of the charges against him [or her], an explanation of the employer's evidence, and an opportunity to present his [or her] side of the story." *Id.* at 367–68 (internal quotations and citations omitted).

Post-termination, "[i]n order to state a claim for failure to provide due process, a plaintiff must have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate." *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000); *cf. McDaniels v. Flick*, 59 F.3d 446, 460 (3d Cir. 1995) ("[A] discharged employee cannot claim in federal court that he has been denied due process because his pretermination hearing was held by a biased individual where he has not taken advantage of his right to a post-deprivation hearing before an impartial tribunal that can rectify any possible wrong committed by the initial decisionmaker."). "[T]aking advantage of available processes is not a procedural hurdle, but is akin to an element of the claim because 'a procedural due process violation cannot have occurred when the governmental actor provides apparently adequate procedural remedies and the plaintiff has not availed himself of those remedies.'" *Reilly v. City of Atl. City*, 532 F.3d 216, 235 (3d Cir. 2008) (quoting *Suzuki*, 227 F.3d at 116)). Nonetheless, "[w]hen access to procedure is absolutely blocked or there is evidence that the procedures are a sham, the plaintiff need not pursue them to state a due process claim." *Suzuki*, 227 F.3d at 118.

Forrester fails to show he was denied due process before he resigned. Forrester was notified of the charges against him and watched video footage of what Chief Bellizzie believed to be the evidence against him on February 6, 2019, nine days before his February 15 *Loudermill* hearing and the Township Manager's termination memorandum. While he alleges he was not afforded a "meaningful, name-clearing hearing" because he was "intimidated, threatened, and/or coerced into resigning," (Am. Compl. ¶ 269), the events leading up to the hearing belie that assertion: understanding

the charges and evidence against him, he resigned on February 7 but voluntarily withdrew his resignation on February 12.  Forrester had the February 15 *Loudermill* hearing, during which Bellizzie read his charges and the evidence supporting them off the same memorandum he read to Forrester on February 6.  Forrester does not allege he was denied an opportunity to present his side of the story; in fact, he claims he spoke during the hearing.

After the hearing, the Township Manager's termination memorandum told Forrester he could appeal his termination through either the grievance procedure of the police CBA or the Police Tenure Act and advised him to consult with a union representative and/or counsel to determine his rights.  But he did not use either appeal process available to him, and he does not allege the processes were a sham or otherwise inadequate.  *See, e.g., Companiony v. Murphy*, 658 F. App'x 118, 122 (3d Cir. 2016) ("Because Companiony failed to take advantage of available post-termination processes, and has also not shown that such processes were inadequate, she cannot bring a claim for failure to provide procedural due process relating to her post-termination proceedings."); *Symonies v. McAndrew*, 416 F. Supp. 3d 377, 392 (M.D. Pa. 2019) ("Because there was an adequate post-deprivation grievance/arbitration procedure provided for in the CBA . . . that was not alleged to have been utilized by Symonies, he has not presented a plausible due process claim.").  Forrester does not explain his failure to take advantage of available post-termination process.  *See Reilly*, 532 F.3d at 236 ("Reilly does not provide any authority for the proposition that a civil servant may state a valid due process claim where s/he has resigned before taking advantage of any post-deprivation procedures available.").

ii

Forrester also fails to plausibly plead constructive discharge.  Resignations from employment are presumed voluntary "until the employee presents evidence to establish that the resignation or retirement was involuntarily procured."  *Leheny v. City of Pittsburgh*, 183 F.3d 220, 227 (3d Cir. 1999).  The Third Circuit recognizes "two circumstances in which an employee's resignation or retirement will be deemed involuntary for due process purposes: (1) when the employer forces the resignation or retirement by coercion or duress, or (2) when the employer obtains the resignation or retirement by deceiving or misrepresenting a material fact to the employee."  *Id.* at 228.

a

The Third Circuit has identified a "non-exhaustive list of factors" to evaluate a constructive discharge claim due to coercion or duress:

> (1) whether the employee was given some alternative to resignation; (2) whether the employee understood the nature of the choice [he] was given; (3) whether the employee was given a reasonable time in which to choose; (4) whether the employee was permitted to select the effective date of the resignation; and (5) whether the employee had the advice of counsel.

*Judge v. Shikellamy Sch. Dist.*, 905 F.3d 122, 125 (3d Cir. 2018) (citation omitted).  The standard for determining whether a resignation was forced by coercion or duress is objective.  *See id.* at 125.  "[T]he ultimate issue is not what [Forrester] [him]self felt or believed, but whether a reasonable person under the circumstances 'would have felt compelled to resign.'"  *Id.* (quoting *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 502 (3d Cir. 2010)).

Based on his allegations, a reasonable person in Forrester's circumstances would not have felt compelled to resign.  As previously discussed, Forrester had, knew of and

failed to exercise an opportunity to appeal the Township's termination decision instead of resigning. He had seven days between receiving notice of his termination on February 15, 2019 and resigning on February 22 to consult counsel and consider his options. *See Symonies*, 416 F. Supp. 3d at 393–94 (one week reasonable time to make informed retirement decision). He ultimately waived his chance to present exculpatory evidence in a second forum by choice. And he had the advice of counsel at least with respect to signing his retirement Agreement. According to the Agreement, he was "fully satisfied with his counsel's representation."

b

Forrester's allegations also do not suggest he was "induced by . . . reasonable reliance upon [Defendants'] misrepresentation of a material fact concerning the resignation" or Defendants' deceit. *Hargray v. City of Hallandale*, 57 F.3d 1560, 1570 (11th Cir. 1995); *Leheny*, 183 F.3d at 227–28 (adopting same standard). Forrester claims Defendants deceived him by misrepresenting that DVWCT was investigating him for insurance fraud and might file criminal charges against him and that DVWCT would force Defendants to press charges against him unless he resigned. (Am. Compl. ¶¶ 273, 287.) But he never alleges his resignation was a product of these misrepresentations. *See generally* (*id.*). To the contrary, he alleges he "felt he had no choice but to resign" because "Defendants exerted such significant duress." (*Id.* at ¶ 285.) And while he says Defendants' threats that he could potentially face criminal charges factored into his resignation, he does not specify he feared criminal charges *because DVWCT* thought he defrauded them. The Amended Complaint and Agreement

23

show Forrester understood Solebury Township itself was considering bringing charges against him because its employees believed he committed insurance fraud.

Moreover, in both his Amended Complaint and Response to Defendants' Motion to Dismiss, Forrester purports to support his claims that Defendants' misrepresentations caused his resignation by listing a multitude of reasons why he did not believe Defendants' statements to be true.  He points out DVWCT never told him or otherwise indicated he was committing, had committed, or intended to commit insurance fraud.  *See* (Am. Compl. ¶¶ 276–79); (Resp. to Mot. to Dismiss 17).  He acknowledges DVWCT authorized his second surgery after he was seen attending his son's baseball games and never stopped paying his benefits but would have if it believed he was misrepresenting his injury.   *See* (Am. Compl. ¶¶ 281–82); (Resp. to Mot. to Dismiss 17).  He also mentions he abided strictly by his doctor's orders, which the IME physician who evaluated him on DVWCT's behalf told him to do.  (Am. Compl. ¶ ¶ 90, 105, 280, 288.)  Forrester fails to plausibly allege how his resignation was a product of Defendants' misrepresentations regarding DVWCT's beliefs given his strong grasp of facts debunking them.  That Forrester was advised to consult a union representative and/or counsel seven days before resigning and was represented by counsel before resigning further undercuts the plausibility of his claim.

iii

Forrester's procedural due process claim (Count I) is dismissed without prejudice.  The Court will allow him to file a second amended complaint amending Count I to the extent he is able to state a plausible claim for relief consistent with this Memorandum.

24

V

If Forrester files a second amended complaint, he should include in it *only* those allegations that are relevant or necessary to plausibly state claims for relief. Most of the paragraphs in the Amended Complaint are gratuitous, unnecessary or legally irrelevant. This is not a complicated case, and neither counsel nor the Court should be burdened with another tome.

Defendants did not seek to dismiss Forrester's state law claims on the merits and argued only that they were precluded by the Agreement's release. (Mot. to Dismiss 18.) The Amended Complaint, however, arguably fails to state a claim for the state law violations, particularly wrongful discharge in violation of public policy (Count III) and intentional infliction of emotional distress (Count VI [sic]). Forrester should carefully scrutinize the elements of these two claims before re-alleging them in a second amended complaint. A cause of action for wrongful discharge under Pennsylvania law exists only as a safeguard for at-will employees. *See H&R Block E. Tax Servs., Inc. v. Zarilla*, 69 A.3d 246, 252 (Pa. Super. Ct. 2013). Additionally, "it is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988). And to state a plausible claim for intentional infliction of emotional distress, in addition to alleging extreme and outrageous conduct that was intentional or reckless a plaintiff must allege the conduct caused severe emotional distress as well as some sort of physical injury, harm or illness related to the distress. *See Rosembert v. Borough of*

*East Lansdowne*, 14 F. Supp. 3d 631, 645–46 (E.D. Pa. 2014); *Corbett v. Morgenstern*, 934 F. Supp. 680, 684 (E.D. Pa. 1996).

      An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*

GERALD J. PAPPERT, J.

26